# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELISSA PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CIV-21-256-JFH-GLJ |
| JESSE JAMES, JESSICA BROWN, | ) |
| DAVID DOBSON, and | ) |
| JESSE PETTY, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion to Dismiss [Docket No. 15], Plaintiff's Motion for Preliminary Injunction [Docket No. 5], and Plaintiff's Motion for Leave to File Supplemental Pleading [Docket No. 26]. This case arises from a series of interactions between Melissa Phillips ("Plaintiff") and Choctaw Nation of Oklahoma Department of Public Safety employees, Defendants Jesse James, Jessica Brown, David Dobson, and Jesse Petty (collectively "Defendants"), regarding alleged actions and inactions taken in relation to a Protective Order issued against Plaintiff's neighbor. Defendants are each sued in their individual capacity. Plaintiff alleges intentional and negligent infliction of emotional distress, slander, defamation, retaliation, violations of numerous Oklahoma criminal statutes, as well as Fourth and Fourteenth Amendment violations, and due process violations. Docket No. 3 at p. 3. The Court has referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction, pursuant to 28 U.S.C. § 636 [Docket No. 30]. For the reasons set forth below, Defendants James,

1

Brown, Dobson, and Petty's Motion to Dismiss [Docket No. 15] should be GRANTED and, consequently, Plaintiff's Motion for Preliminary Injunction [Docket No. 5] and Motion for Leave to File Supplemental Pleading [Docket No. 26] should both be DENIED as MOOT.

## BACKGROUND

The Amended Complaint alleges Defendants Jesse James and Jesse Petty serve as supervisors in the Choctaw Nation's law enforcement department, while Defendants Jessica Brown and David Dobson serve as officers under their supervision. *See* Docket No. 3 at p. 13. Plaintiff alleges that for the better part of August 2021, she suffered under a flurry of invasive and harassing behavior from her neighbor that continued despite multiple attempts at intervention from Choctaw Nation authorities, including Defendants Brown and Dobson. *Id.* at pp. 5-8. On August 17, 2021, Plaintiff's neighbor was served with a Protective Order that ultimately failed to end the behavior. *Id.* at p. 6. Plaintiff alleges that she is a member of a tribe other than the Choctaw Nation, that the Protective Order was issued by a tribal court, and that her neighbor is not a member of any tribe. *Id.* at pp. 1 and 15. Plaintiff further alleges that, despite the assurances of Defendants Petty and James, Defendants Dobson and Brown failed to generate or file reports on these Protective Order violations. *Id.* at pp. 5-9 and 12-13. Simultaneously, Plaintiff alleges that some reports were generated, but that they contained false or misleading information or were completed by officers not named in her complaint. *Id.* at pp. 12-13. Plaintiff also alleges that Defendant Petty defamed her when he accused her of "calling everyone she comes in contact with a liar." *Id.* at p. 13. Plaintiff further alleges that despite her repeated

2

requests, Defendants James and Petty failed to forward the neighbor's protective order violations to any prosecutorial office, thus precluding meaningful enforcement. *Id.* Finally, Plaintiff alleges that, upon learning of this litigation, Defendants refused to provide her further details about any investigation into her dispute with her neighbor. *Id.*

## PROCEDURAL HISTORY

Plaintiff filed the present case *pro se* on August 26, 2021, against the above-named Defendants. *See* Docket No. 2. She then filed an Amended Complaint on September 9, 2021, and a Brief in Support of Civil Complaint on October 12, 2021. *See* Docket Nos. 3 and 7. As Plaintiff is proceeding *pro se*, her filings are "to be construed liberally" such that if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so," so long as the court does not assume the "role of advocate for the *pro se* litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). At the outset of her Amended Complaint, Plaintiff lists the following as claims for relief: "Intentional infliction of emotional distress, negligent infliction of emotional distress, slander, defamation, due process violations, retaliation and harassment for filing suit" as well as violations Oklahoma Statutes Title 21 §§ 94-96, 421 (which appear to be definitional in nature). Docket No 3 at p. 3. Plaintiff's only listed claims plausibly arising under federal law are due process violations and violations of the Fourth and Fourteenth Amendments. These initial claims are divorced from argument or explanation and are listed out in an unadorned fashion, operating as a quasi-preamble to the body of her Amended Complaint. The body of Plaintiff's pleading, where it concerns the actions of Defendants, contains allegations only that Defendants defamed her, refused to enforce an existing protective

3

order, acted in concert to prevent her from acquiring a permanent protective order, and retaliated against her after filing the original Complaint. *Id.* at pp. 8-9 and 13. Plaintiff additionally contends that Defendants' actions constitute due process violations, sex and disability-based discrimination,[1] and a violation of her right under the Violence Against Women Act[2] to be protected from stalking and harassment. *Id.* at 8.

On January 11, 2022, Defendants collectively filed a Motion to Dismiss for lack of Jurisdiction, Motion to Dismiss Case for Failure to State a Claim, and Motion to Dismiss Case as Frivolous. *See* Docket No. 15.

## ANALYSIS

In Defendants' Motion to Dismiss, they argue that Plaintiff's Amended Complaint should be dismissed pursuant to sovereign immunity, qualified immunity, a failure to state a claim, and Plaintiff's omission of necessary parties. Specifically, Defendants assert that all actions complained of by Defendants were taken in their official capacities as Choctaw Nation employees and are entitled to sovereign immunity. Therefore, all claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Defendants also argue that they are entitled to qualified immunity as public employees,

---

[1] Plaintiff sprinkles cursory references to sex and disability-based discrimination by Defendants throughout her Amended Complaint but fails to allege any facts, much less sufficient facts, to support an equal protection § 1983 claim. *See Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988) ("Although there is no general constitutional right to police protection, the state may not discriminate in providing such protection. A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent.")

[2] The provision within the Violence Against Women Act that provided a victimized person with a private right of action was struck down in *U.S. v. Morrison*, 529 U.S. 598 (2002). *See also Comardelle v. Hernandez*, 26 F. Supp. 2d 897 (E.D. La. 1998), *aff'd*, 211 F.3d 592 (5th Cir. 2000) (finding that VAWA did not support a cause of action against prosecutors for failure to prosecute).

contending that Plaintiff can prove neither that Defendants violated any of Plaintiff's rights nor that any such right was clearly established at the time of any alleged violation. Defendants further argue that Plaintiff fails to adequately allege a due process violation, a negligent or intentional infliction of emotional distress claim, a defamation claim, or a slander claim, and that these allegations should be dismissed for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Finally, Defendants argue that Plaintiff failed to name the Choctaw Nation and her neighbor in the complaint and that both are indispensable parties, one of which cannot be joined due to sovereign immunity. Plaintiff asserts that Defendants' characterizations of her allegations are erroneous, that her suit is against Defendants and not the Choctaw Nation, that a novel interpretation of the qualified immunity doctrine would avoid its application, that Defendants failed to properly deny some unidentified factual allegations, that Defendants misunderstand her rights under the Violence Against Women act, that Defendants misunderstand tribal courts jurisdiction in protective order matters, and asserts that Defendants arguments are deceptive and made in bad faith. For the reasons set forth below, the undersigned Magistrate Judge finds that Defendants James, Brown, Dobson, and Petty's Motion to Dismiss [Docket No. 15] should be GRANTED for lack of subject matter jurisdiction on grounds of sovereign immunity and for the comity concerns underpinning the tribal exhaustion rule.

## I. Subject Matter Jurisdiction

Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Gad v. Kansas State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) (recognizing federal courts are

courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Further, the burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Id.*

A rule 12(b)(1) motion to dismiss that challenges the facial validity of a complaint is subject to the same plausibility standard established in *Twombly* and *Iqbal* regarding Rule 12(b)(6) motions. *See Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1293, n. 3 (10th Cir. 2017). Where an issue is resolved based on the complaint, a court must accept its factual allegations, but not its legal conclusions, as true. *Id.* at 1293 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Mere 'labels and conclusions' do not count." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, where the interests of a sovereign tribal nation are implicated, "federal policy supporting tribal self-government requires federal courts, as a matter of comity, to stay their hands in order to give tribal courts a full opportunity to first determine their own jurisdiction." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 9 (1987) (citing *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 976-77 (1985)).

### A. Sovereign Immunity

The governments of Native American tribes, such as the Choctaw Nation, enjoy the same immunity from suit enjoyed by other sovereign powers and are "subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe*

*of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). This immunity generally applies to government officials of a Native American tribes acting in their official capacity. *See Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1296 (10th Cir. 2008). ("It is clear that a plaintiff generally may not avoid the operation of tribal immunity by suing tribal officials. . . . Accordingly, a tribe's immunity generally immunizes tribal officials from claims made against them in their official capacities."). The doctrine of tribal sovereign immunity, however, "does not immunize the individual members of the tribe." *Puyallup Tribe v. Washington Game Department*, 433 U.S. 165, 171-172 (1977), *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978) ("[A]s an officer of the Pueblo, petitioner. . . is not protected by the tribe's immunity from suit.").

Moreover, individual defendants may be sued in their individual capacities even where a suit arises out of actions the individuals took in their official capacities. *Seneca-Cayuga Tobacco Co.*, 546 F.3d at 1296. (citing *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992). In cases where a tribal employee is sued in an individual capacity, "courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 581 U.S. 155, 161-62 (2017). In so doing, courts must look not to the characterization of the parties, but to whether the remedy sought is against the individual or the sovereign. *Id.* at 162. If the relief sought is only nominally against the official and is in fact against the official's office, then the real party in interest is the sovereign and the suit will be barred on the basis of sovereign immunity. *Id.* at 161-162.

Where, however, the plaintiff's suit seeks monetary damages from the individual

for unconstitutional or wrongful conduct fairly attributable to the individual, sovereign immunity does not bar the suit so long as the relief is sought not from the sovereign's treasury but from the official personally. *Native Am. Distrib.*, 546 F.3d at 1297 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). Thus, the issue of whether a plaintiff's claims against defendants sued in their individual capacities will be barred by the Tribe's immunity is determined by whether the relief requested would operate against the Tribe or the individuals themselves.

Here, Plaintiff seeks a myriad of equitable remedies largely asking the court to instruct the Choctaw Nation on how it is to handle its prosecution of alleged Protective Order violations. Throughout her Amended Complaint, Plaintiff requests the following: a declarative order stating that Tribal Courts have authority over non-tribal members in protective order matters, Docket No. 3 at p.16; a declarative order that the failure of police supervisors to review evidence is a due process and civil rights violation *Id.*; an order compelling the production of the no-trespass order she contends was served on her neighbor, *Id.* at p. 17; an order compelling the tribe to send the alleged trespass case to a prosecutor, *Id.*; an order compelling the production of a report of an interaction between Brown and the alleged trespasser, *Id.* at p. 18; an emergency order compelling a federal investigation into corruption allegations within the Choctaw Nation's law enforcement department, *Id.*; an order compelling Tribal law enforcement to forward any protective order violations to a federal prosecutor, *Id.* at p. 19; a declarative order stating that the failure to enforce Plaintiff's Protective Order is placing her in danger, *Id.*; an order compelling Tribal law enforcement to follow federal statutes, *Id.*; and an order compelling

8

interested parties to attend a hearing and produce evidence regarding allegations of withholding evidence, *Id.* at p. 20. Plaintiff does not attempt to direct these prayers for relief at Defendants but instead appears to address them to the Choctaw Nation. As such, the real party in interest for all claims related to these equitable prayers for relief is the Choctaw Nation and these claims are barred by sovereign immunity. *See Lewis*, 581 U.S. at 161-62.

### B. Comity

In addition to equitable remedies, Plaintiff also asks for $250,000, jointly and severally, from Defendants. Docket No. 3 at p. 21. *Native American Distributing* makes it clear that claims for monetary damages from Defendants, sued in their individual capacity, will not be barred by sovereign immunity, so long as it is clear that Plaintiff seeks money damages from the individual defendants personally and not from the tribal treasury. 546 F.3d at 1297. Here, the prayer for monetary damages is asserted against the individual Defendants in a way that does not implicate the Choctaw Nation or its treasury, thus tribal sovereignty will not operate to bar any claims related to that prayer for relief. *See Nahno-Lopez v. Houser*, 627 F. Supp. 2d 1269, 1286-87 (W.D. Okla. 2009) (granting a motion to dismiss claims for injunctive relief against individual tribal employees but denying those for monetary damages). However, the basis for Plaintiff's monetary damage claims is not entirely clear. Plaintiff's prayer for monetary damages simply states:

> 250,000 to be paid severally and jointly in their individual capacity as no job description allows police to commit crimes of falsely presenting evidence to court, as they have, and omitting withholding evidence to thwart justice and go around defaming the plaintiff in retaliation of filing suit to get relief. Such injurious intentional and negligent infliction of emotional distress they have

caused the plaintiff asks for punitive damages.

Docket No. 3 at p 21.

Among the unadorned listing of causes of action at the outset of her Amended Complaint, Plaintiff listed violations of the Fourth and Fourteenth Amendments and her due process rights. Docket No. 3 at p. 3. While it is conceivable that Plaintiff intends to link these federal claims to the prayer for monetary damages, the body of the Amended Complaint provides no such indication. As discussed in *Iqbal*, Rule 8(a)(2) requires a plaintiff to plead sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. 556 U.S. at 678. Further, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 544). An unadorned listing of possible causes of actions, divorced from argument or explanation, clearly falls short of the standard put forth in *Iqbal* and *Twombly*. To find that the federal claims listed at the outset of Plaintiff's Amended Complaint are connected to her claim for monetary damages would likely pass into the realm of "assum[ing] the role of advocate for the *pro se* litigant." *Hall*, 935 F.2d at 1110. The undersigned Magistrate Judge therefore declines to do so. Without more, Plaintiff's federal claims cannot survive. Further, even if the Court could construe a valid federal claim attached to Plaintiff's prayer for monetary damages, the comity concerns raised by the tribal exhaustion doctrine further counsel against exercising federal jurisdiction in this case.

### 1. Tribal Exhaustion Doctrine

Although no party raised the tribal exhaustion doctrine, it is within a court's

discretion to raise the doctrine *sua sponte* where a case concerns issues of comity. *Smith v. Moffett*, 947 F.2d 442, 445 (10th Cir. 1991). The tribal exhaustion doctrine provides that, "as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies." *See United States v. Tsosie*, 92 F.3d 1037, 1041 (10th Cir. 1996) (internal quotations omitted), *see also Becker v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 11 F.4th 1140 (10th Cir. 2021). Further, because "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty [and] the extent to which that sovereignty has been altered, divested, or diminished. . . that examination should be conducted in the first instance in the Tribal Court itself." *Nat'l Famers Union Ins. Co.*, 471 U.S. at 855-56. The Tenth Circuit has "taken a strict view of the tribal exhaustion rule and [has] held that federal courts should abstain when a suit sufficiently implicates Indian sovereignty or other important interests[,]" such as where a case is found to be a "reservation affair." *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir. 1997).

### 2. Reservation Affair

When the dispute at issue is a "reservation affair," comity concerns "almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forums." *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1378 (10th Cir. 1993), *see also Kerr-McGee Corp.*, 115 F.3d at 1507 ("[T]his court at times abstains without making a detailed comity analysis, holding that 'when the dispute is a "reservation affair" there is no discretion not to defer.'") (internal citations omitted). However, when the dispute involves non-Indian activity

occurring outside the reservation, the court must assiduously examine the *National Farmers* factors to determine whether comity concerns invoke the tribal exhaustion rule. *See Kerr-McGee Corp.*, 115 F.3d at 1507. Whether a particular case presents a "reservation affair" may turn on whether the claims at issue implicate tribal interests, *see Id.* at 1508 (considering the "tribal nexus" and the interest of the tribe in protecting and vindicating the rights of its residents when evaluating whether the case presented a reservation affair); whether a case implicates tribal law or policy, *see Navajo Nation v. Intermountain Steel Bldgs.*, 42 F. Supp 2d 1222, 1229 (D.N.M. 1999) (considering whether tribal law is at issue in determining whether the case presents a reservation affair); whether a tribal-court proceeding involving the same parties is pending, *see Hartman v. Kickapoo Tribe Gaming Comm'n*, 176 F. Supp 2d 1168, 1181 n.6 (D. Kan 2001), aff'd, 319 F.3d 1230 (10th Cir. 2003); or whether resolution of the dispute involves interpretations of tribal law, *see Johnson v. Harrah's Kan. Casino Corp.*, 2006 WL 463138 (D. Kan. Feb. 23, 2006).

The facts here indicate that this is a 'reservation affair' as contemplated within the Tenth Circuit. Plaintiff alleges that she is a member of a tribe other than the Choctaw Nation and is suing employees of the Choctaw Nation for actions and inactions they have taken in relation to the enforcement of a protective order originating in the Choctaw Nation's court system. *See* Docket No. 3. The tribal nexus is strong, as is the interest of the tribe in protecting the rights of its members and employees. *See Kerr-McGee Corp.*, 115 F.3d at 1508. Plaintiff's Amended Complaint also directly implicates tribal law or policy and the interpretation thereof. *See* Docket No. 3 at pp. 18-20, *see also Intermountain Steel Bldgs.*, 42 F. Supp 2d at 1229, *see generally Johnson v. Harrah's Kansas Casino Corp.*,

2006 WL 463138 (D. Kan. Feb. 23, 2006). The undersigned Magistrate Judge thus recommends that this case be considered a 'reservation affair' requiring the federal courts to abstain from exercising jurisdiction until all tribal remedies may be exhausted, as where "the dispute is a 'reservation affair' there is no discretion not to defer." *Texaco, Inc.*, 5 F.3d at 1378. However, even if this case is not a classic 'reservation affair' an assiduous evaluation of the *National Farmers* factors also counsels deference to the Choctaw Tribal Courts.

### 3. *National Farmers* Comity Analysis

There are three objectives to be considered in a comity analysis under *National Farmers*: "(1) to further the congressional policy of supporting tribal self government; (2) to promote the orderly administration of justice; and (3) to obtain the benefits of tribal expertise." *Texaco Inc.*, 5 F.3d at 1377-78. None of these objectives would be advanced by the exercise of federal jurisdiction over a matter concerning a protective order originating in the Choctaw Nation Tribal Courts and enforced by Choctaw Nation employees. As this case concerns in large part the Choctaw Nation's internal policies and laws, "the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed." *National Farmers*, 471 U.S. at 856. And the Supreme Court has observed that federal courts should avoid "direct competition" with Tribal Courts by staying or dismissing cases where both the federal and Tribal Court may possess concurrent jurisdiction. *Iowa Mutual*, 480 U.S. at 15-16.

Four narrow exceptions can avoid an application of the Tribal Exhaustion rule. The exceptions are: (1) "where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith[,]" *Becker*, 11 F.4th at 1149, (2) "where the action is patently violative of express jurisdictional prohibitions[,]" *Id.*, (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction[,]" *Id.*, and (4) "where it is clear that the tribal court lacks jurisdiction and that judicial proceedings would serve no purpose other than delay." *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1239 (10th Cir. 2014). The undersigned Magistrate Judge finds that none of these exceptions apply.

The undersigned Magistrate Judge further finds that the exercise of federal jurisdiction in this case would only serve to contravene the federal policy of supporting tribal self-government, s*ee Iowa Mut. Ins. Co.*, 480 U.S. at 9, and likely align the court with the "Cornbread Mafia" that Plaintiff contends is conspiring to rob all tribal nations of their jurisdictional grants [Docket No. 3, p 14]. Accordingly, Plaintiff's federal claims should be dismissed as a matter of comity. [3]

**II. State Law Claims**

While Plaintiff's federal claims fail due to sovereign immunity and comity concerns, it is possible that Plaintiff pleads valid state law claims in her prayer for monetary damages. Although claims of defamation, retaliation, and intentional and negligent

---

[3] "[T]he exhaustion rule enunciated in *National Farmers Union* did not deprive the federal courts of subject-matter jurisdiction. Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite." *Iowa Mut. Ins. Co.*, 480 U.S. at 16, n. 8.

infliction of emotional distress may be cognizable in a state or tribal court, they cannot grant a federal court subject matter jurisdiction by themselves. *See* 28 U.S.C. § 1331, *see also Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) ("[f]ederal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress.") (internal citations omitted). "Under these circumstances, the district court may decline to exercise continuing 'pendent' or supplemental jurisdiction over plaintiff's claims." *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3) and *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-26 (1966)). As this case has no surviving claims which might grant federal jurisdiction the undersigned Magistrate Judge recommends against an exercise of pendent jurisdiction and for dismissal of any remaining state claims.

### III.  Leave to Further Amend

Finally, although the Court should grant leave to amend freely "if it appears at all possible that the plaintiff can correct the defect," *Triplett v. Leflore Cnty., Okla.*, 712 F.2d 444, 446 (10th Cir. 1983), leave to amend may be denied where there is a "showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). The undersigned Magistrate Judge finds further amendment would be futile and recommends that any request to further amend the Amended Complaint should be denied.

## CONCLUSION

In summary, the undersigned Magistrate Judge PROPOSES the findings set forth above and accordingly RECOMMENDS that the Defendants' Motion to Dismiss [Docket No. 15] should be GRANTED without prejudice.[4] Consequently, Plaintiff's Motion for Preliminary Injunction [Docket No. 5] and Motion for Leave to File Supplemental Pleading [Docket No. 26] should both be DENIED as MOOT. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

IT IS SO ORDERED this 18th day of January, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] *See e.g., Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004) ("In cases where the district court has determined that it lacks jurisdiction, dismissal of a claim must be without prejudice.").